IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

INGRID JUNE MACKLIN,)
    Plaintiff)
)
    v.) 2:14-CV-999
)
COMMISSIONER OF SOCIAL)
SECURITY,)
    Defendant.)

MEMORANDUM and ORDER

Mitchell, M.J.

    Presently before the Court for disposition are cross motions for summary judgment. For the reasons set forth below, the plaintiff's motion (ECF. No.11) will be denied, the defendant's motion (ECF. No.13) will be granted and the decision of the Commissioner will be affirmed.

    On July 28, 2014, Ingrid June Macklin, by her counsel, filed a complaint pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended, 42 U.S.C. §§405(g) and 1383(c)(3) for review of the Commissioner's final determination disallowing her claim for a period of disability or for disability insurance benefits and supplemental security income benefits under Sections 216(i) and 223 of the Social Security Act, as amended, 42 U.S.C. §§416(i) and 423 and 1381 cf.

    The plaintiff filed an application for disability and supplemental security income benefits on January 11, 2012 (R.126-136). Benefits were denied on March 21, 2012 (R.66-75). On April 9, 2012, the plaintiff requested a hearing (R.78-79), and pursuant to that request a hearing was conducted on June 19, 2013 (R.23-43). In a decision filed on September 11, 2013, an Administrative Law Judge denied benefits (R.12-22). On November 12, 2013, the plaintiff

1

requested reconsideration of this determination (R.9-11), and upon reconsideration, and in a decision dated May 23, 2014, the Appeals Council affirmed the prior decision (R.1-3). The instant complaint was filed on July 28, 2014.

In reviewing an administrative determination of the Commissioner, the question before any court is whether there is substantial evidence in the agency record to support the findings of the Commissioner that the plaintiff failed to sustain his/her burden of demonstrating that he/she was disabled within the meaning of the Social Security Act..

It is provided in 42 U.S.C. Section 405(g) that:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive....

Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Johnson v. Comm'r. 529 F.3d 198 (3d Cir.2008) and the court may not set aside a decision supported by substantial evidence. Hartranft v. Apfel, 181 F.3d 358 (3d Cir.1999)

Presently before the Court for resolution is a determination of whether or not there is substantial evidence to support the findings of the Commissioner that the plaintiff is not disabled within the meaning of the Act.

At the hearing held on June 19, 2013 (R.23-43), the plaintiff appeared with counsel (R. 25), and testified that she was fifty-four years old (R.27); had earned a college degree (R.27); worked as a certified nursing assistant in December 2011 (R.28); that she cannot lift or transfer patients (R.29) and that she was then working ten hours a week at the rate of two hours a day (R.29).

2

The plaintiff also testified that she attended cardiac rehabilitation (R.30); that she has diabetes and as a result tires easily (R.30); that she experiences shortness of breath from exertion (R.32); that her feet become numb (R.35) that she takes medication for diabetes and neuropathy (R.31, 35) and that she can perform household chores for about thirty to forty-five minutes before resting (R.37).

At the hearing a vocational expert was called upon to testify (R.38-42). She described the plaintiff's prior work as unskilled to semi-skilled at the light to medium exertional levels (R.40). When the witness was asked to assume an individual of the plaintiff's age, education and prior work experience who could lift up to twenty pounds occasionally and frequently lift and carry ten pounds, who had to stand, walk or sit for up to six hours a day, the witness testified that she could no longer perform her past work but could engage in other employ which was plentiful in the national economy (R.40-41). Even if the individual could only stand or walk for about two hours a day, but could sit for about six hours, the witness testified that there were still jobs she could perform (R.41-42). However, the witness also testified that if the individual had to elevate her legs she could not be employed (R.42).

The issue before the Court is whether or not the decision of the Commissioner is supported by substantial evidence.

The term "disability" is defined in 42 U.S.C. Section 423(d) (1)(A) as:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months....

For purposes of the foregoing, the requirements for a disability determination are provided in 42 U.S.C. Section 423(d)(2)(A):

An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence ... "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. Section 423(d)(3). These provisions are also applied for purposes of establishing a period of disability. 42 U.S.C. Section 416(i)(2)(A).

It is provided in 42 U.S.C. Section 1382c(a)(3) that:

(A)... an individual shall be considered to be disabled for purposes of this subchapter if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

(B) For purposes of subparagraph (A), an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence ... "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

* * *

(D) For purposes of this paragraph, a physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

It is also provided that:

Notwithstanding the provisions of subparagraphs (A) through (E), an individual shall also be considered to be disabled for purposes of this subchapter if he is permanently and totally disabled as defined under a State plan approved under subchapter XIV or XVI of this chapter as in effect for October 1972 and received aid under such plan (on the basis of disability) for December 1973 (and for at least one month prior to July 1973), so long as he is continuously disabled as so defined.

42 U.S.C. Section 1382c(3)(F).

Pursuant to the authorization contained in 42 U.S.C. Section 1382c(3)(D), the Commissioner has promulgated certain regulations for the implementation of the Supplemental Security Income Program. While these statutory provisions have been regarded as "very harsh," nevertheless, they must be followed by the courts. NLRB v. Staiman Brothers, 466 F.2d 564 (3d Cir. 1972); Choratch v. Finch, 438 F.2d 342 (3d Cir. 1971); Woods v. Finch, 428 F.2d 469 (3d Cir. 1970). Thus, it must be determined whether or not there is substantial evidence in the record to support the conclusion of the Commissioner that the plaintiff is not disabled within the meaning of the Social Security Act.

For this purpose, certain medical evidence was reviewed by the Commissioner.

The plaintiff was hospitalized at the Monongahela Valley Hospital from March 30, 2011 through March 31, 2011 for chest pain. No unusual findings were made and medication was prescribed (R.200-220).

The plaintiff was hospitalized at the Monongahela Valley Hospital from December 10, 2011 through December 16, 2011 for a myocardial infarction. She was treated with medication. Polysubstance abuse was also noted (R.221-277).

The plaintiff was treated at the Mon Valley Community Health Services between December 22, 2011 and February 14, 2012 for diabetes, coronary artery disease, cardiomyopathy

5

and hypertension. Continued medication and smoking and cocaine use cessation were recommended (R.603-627).

The plaintiff was hospitalized at the Monongahela Valley Hospital from December 29, 2011 through January 1, 2012 for non-cardiac chest pain, acute kidney injury and hyponatremia. On discharge, a low fat diet as well as increased activity and discontinuance of smoking and cocaine use were recommended. Mediation was also prescribed (R.278-313).

The plaintiff was treated by Dr. Richard Seecof on January 10, 2012 and a diagnosis of coronary artery disease, hypertension, hyperlipidemia and diabetes was made. The doctor observed that the plaintiff continued to improve and was to continue on medication (R.314-328).

The plaintiff was treated by Dr. Alexander Tal from December 10, 2011 through January 20, 2012 for type I diabetes. Also diagnosed were hypertension, hyperlipidemia, coronary artery disease, cardiomyopathy and tobacco and alcohol abuse (R.329-360).

The plaintiff was treated for glaucoma on January 27, 2012 (R.361-365).

The plaintiff was treated between December 17, 2011 and February 14, 2012 by AMEDISYS Home Health for diabetes, uncontrolled hypertension, myocardial infarction, polysubstance abuse and arteriosclerotic heart disease. Medication was prescribed (R.366-602).

The plaintiff had a mammogram and colonoscopy performed between June 28, 2011 and March 6, 2012. The mammogram was interpreted as normal and two polyps were removed during the colonoscopy (R.628-659).

The plaintiff attended cardiac rehabilitation between February 20, 2012 and March 14, 2012 (R.660-674).

In a psychiatric review prepared on March 20, 2012, Michelle R. Santilli, Psy.D. concluded that no medically determinable impairment was established (R.675).

In a report of an evaluation on May 29, 2012, Dr. R.M.Seecof noted a 100% occlusion of the left anterior descending coronary artery. He further concluded that the plaintiff did not demonstrate an inability to perform on an exercise test, had no marked limitations of physical activities, did not require rest periods during the day, did not need to elevate her legs and could perform a normal day's work (R.741).

In a medical evaluation completed on June 14, 2012, Dr. Nathaniel E.B.Arcega observed that the plaintiff had done well in cardiac rehabilitation (R.676).

In a medical review analysis prepared on June 14, 2012, Dr. Christine Vu determined that the plaintiff was not medically disabled and could adjust to gainful employment (R.677).

The plaintiff was treated at the Glaucoma-Cataract Consultants between July 17, 2012 and August 29, 2012 (R.758-762).

In a residual physical capacity assessment completed on August 30, 2012 Dr. Abu Ali noted that she could occasionally lift up to twenty pounds, frequently left up to ten pounds and stand, walk or sit for about eight hours (R.678-680).

The plaintiff was treated at the Monongahela Valley Hospital emergency room on January 31, 2013 for a tooth ache and jaw pain (R.717-727).

The plaintiff was treated at Century Cardiac Care between January 10, 2012 and April 12, 2013 for coronary artery disease. Smoking cessation was again urged, and some of her medications were discontinued (R.742-756; 764-792).

The plaintiff was treated at the Mon Valley Community Health Services between May 7, 2012 and April 23, 2013 for hypertension which was medically treated and nicotine addiction (R.681-716).

7

In a statement dated April 23, 2013 Dr. Diane Fox noted that the plaintiff was taking medication for diabetes, coronary artery disease, chronic obstructive pulmonary disease and glaucoma. It was also noted that the plaintiff experienced shortness of breath upon exertion (R.757).

The plaintiff had diabetic follow-up treatment at the Partners in Nephrology and Endocrinology between May 10, 2012 and May 10, 2013(R.728-740).

In a report dated May 10, 2013, Dr. Alexander Tal diagnosed Type II diabetes with insulin resistance, neuropathy and coronary artery disease with cardiomyopathy (R.763).

The relevant regulations require explicit findings concerning the various vocational factors which the Act requires to be considered in making findings of disability in some cases. These regulations, published at 20 C.F.R. §§404.1501, et seq., set forth an orderly and logical sequential process for evaluating all disability claims. In this sequence, the Administrative Law Judge must first decide whether the plaintiff is engaging in substantial gainful activity. If not, then the severity of the plaintiff's impairment must be considered. If the impairment is severe, then it must be determined whether he/she meets or equals the "Listings of Impairments" in Appendix 1 of the Regulations which the Commissioner has deemed of sufficient severity to establish disability. If the impairment does not meet or equal the Listings, then it must be ascertained whether he/she can do his/her past relevant work. If not, then the residual functional capacity of the plaintiff must be ascertained, considering all the medical evidence in the file. The finding of residual functional capacity is the key to the remainder of findings under the new regulations. If the plaintiff's impairment is exertional only, (i.e. one which limits the strength he/she can exert in engaging in work activity), and if his/her impairment enables him/her to do sustained work of a sedentary, light or medium nature, and the findings of age, education and

work experience, made by the Administrative Law Judge coincide precisely with one of the rules set forth in Appendix 2 to the regulations, an appropriate finding is made. If the facts of the specific case do not coincide with the parameters of one of the rules, or if the plaintiff has mixed exertional and non-exertional impairments, then the rules in Appendix 2 are used as guidelines in assisting the Administrative Law Judge to properly weigh all relevant medical and vocational facts.

> Based on the evidence presented, the Commissioner concluded:
>
> The claimant meets the insured status requirements of the Social Security Act through September 30, 2015.
>
> The claimant has not engaged in substantial gainful activity since December 10, 2011.
>
> The claimant has the following severe impairments: coronary artery disease, status post myocardial infarction, with compensated congestive heart failure; and diabetes mellitus with peripheral neuropathy.
>
> These conditions limit her ability to do basic work activities. She also has a history of sleep apnea, substance use disorder, and obesity, but I do not find that these conditions, singly or in combination, have more than a trivial effect on her ability to work, so they do not constitute severe medically determinable impairments under the law.
>
> The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 29 CFR Part 404, Subpart P, Appendix 1…
>
> Treatment in a cardiac rehab program has effectively restored the left ventricular ejection fraction to an essentially normal level… and the results of a treadmill test showed no ischemic electrocardiogram changes at 7 MET's of exercise. Therefore, the claimant's heart disease did not satisfy a cardiovascular listing for any period of twelve months or more. Her cardiologist confirmed this conclusion. Despite Dr. Tal's responses to a checklist furnished by counsel there is absolutely no indication that the claimant's mild to moderate peripheral neuropathy causes sustained disturbance in gait and station, or of fine and dexterous movements in two extremities. To the contrary, the claimant was described as neurologically intact in December 2012. She had no gross sensory or motor deficits at all on physical examination during a trip to the emergency room in January 2013. In short, while there may be some sensory neuropathy causing relative numbness in

the feet, the claimant is able to walk unassisted and to stand with substantial limitation. She does not approach the neurologic listings implied by Dr. Tal.

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work…

[T]he fact that she is she actually is working part time suggests that she could do more if work were available for her. She has had relatively sporadic and fluctuating earnings over the past few years, so I cannot reasonably presume that the claimant's current loss of earnings is solely attributable to her medically determinable impairments. She uses medications, but these are neither of types nor in doses commonly prescribed for disabling symptoms… Therefore , after careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably cause symptoms, but I do not accept claimant's statements concerning the intensity, persistence and limiting effects of these symptoms. They do not overcome my residual functional capacity assessment…

The claimant remains on standard medications to regulate heart function, minimize the risk of arterial plaque and clots, and control her blood pressure, but she neither requires nor received intensive medical management of her cardiovascular disorder, and has not been considered for bypass surgery or other aggressive treatment. I find, based on the claimant's good performance at cardiac rehab and the good function of the left ventricle, which had initially been limited by her disease, that she regained a capacity for a wide range of light work within a year after the onset of severe cardiac difficulties. She has regained the ability to do such activities as standing and walking for a majority of a workday, lifting and carrying objects that weigh up to twenty pounds on occasion, and bending with… limitations…

The claimant first became aware of her diabetic condition while being treated for her heart attack, and treatment has consisted generally of insulin injections.

As for the claimant's report of shortness of breath on exertion, she has not required treatment for any pulmonary disorder, and she continues to smoke, so there is no reasonable basis for finding that she would suffer undue exacerbation of her breathing problems is she were to do a light job… the simple expedient of smoking cessation can reasonably be expected to improve the claimant's overall health and enable her to remain active at a level that is entirely consistent with substantial gainful activity…

I have already addressed the opinion of Dr. Tal that the claimant's diabetic neuropathy met the requirements of a listing. That conclusion is unsupportable, and the doctor has provided no acceptable documentation of the notions that the claimant's diabetes mellitus is "insulin resistant," or that she requires rest periods during the day due to medically observable fatigue. These proposed limitations

lack support and cannot be accepted. On the other hand, Dr. Seecof, the Board-certified cardiologist most familiar with the claimant's heart condition, has reasonably opined that the claimant does not require rest periods and, in fact, can work a normal workday and workweek. His superior qualifications and his intimate knowledge of the claimant's cardiovascular history entitle his assessment to great weight. Finally, Dr. Fox's flat assertion that the claimant has no work capacity at all is manifestly based on the claimant's report of symptoms and is unsupported by relevant abnormal findings on physical examination or laboratory studies, and I give it minimal weight.

\*\*\*

Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform…

The claimant has not been under a disability, as defined in the Social Security Act, from December 10, 2011, through the date of this decision …(R.17-22).

The record demonstrates that the plaintiff suffers from coronary artery disease, congestive heart failure, diabetes and neuropathy. However, the medical reports which are supported demonstrate that these conditions are well controlled and do not cause any difficulties which would impede the plaintiff's ability to engage in substantial gainful employ. Where the evidence on residual capacity conflicted, the Administrative Law Judge explained that she rejected those submissions which were not supported, and placed little credibility in them. Since the Administrative Law Judge is charged with credibility determinations, Morales v. Apfel, 225 F.3d 310, 317 (3d Cir.2000), her conclusions are well grounded.

Summary judgment is appropriate where there are no material issues of fact in dispute and the movant is entitled to judgment as a matter of law. Lichtenstein v. UPMC, 691F.3d 294, 300 (3d Cir.2012). In the instant case, there are no material factual issues in dispute, the decision of the Commissioner is supported by substantial evidence, and judgment should be entered for the defendant and against the plaintiff. An appropriate Order will be entered.

ORDER

AND NOW, this 6th day of April 2015, for the reasons set forth in the foregoing Memorandum,

IT IS ORDER that the plaintiff's motion for summary judgment (ECF. No.11) is DENIED, the defendant's motion for summary judgment (ECF. No.13) is GRANTED and the decision of the Commissioner is AFFIRMED.

s/ Robert C. Mitchell<br>
United States Magistrate Judge.